## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 16 2019, 9:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Elson Ford, Jr.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Liberty L. Roberts
Church Church Hittle + Antrim
Noblesville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Elson Ford, Jr., <br> *Appellant*, <br><br> v. <br><br> The Oaks Academy, <br> *Appellee*. | August 16, 2019 <br><br> Court of Appeals Case No. 19A-CT-483 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable David J. Dreyer, Judge <br><br> Trial Court Cause No. 49D10-1702-CT-5870 |

**Brown, Judge.**

[1] Elson Ford, Jr., *pro se*, appeals the entry of summary judgment in favor of The Oaks Academy and Elizabeth Hamilton (together, "Appellees").[1] We affirm.

*Facts and Procedural History*

[2] Simonna Woodson and Ford have a child together, J. On March 21, 2014, Woodson signed an enrollment contract for the 2014/2015 academic year for J. to enroll as a second grade student at The Oaks Academy, and she later signed a summary of tuition and payment options document for J. for that year. J. was also enrolled in The Oaks Academy for the 2015/2016 academic year. Although a written enrollment contract was not signed for that year, Woodson signed a summary of tuition and payment options document for the year. In January 2016, Woodson informed The Oaks Academy that problems had developed over the holiday break, that Ford could no longer pick up J. from school, and that she was acquiring paperwork and would provide it to the school.

[3] In February 2016, Woodson obtained an *ex parte* order for protection against Ford under cause number 49G21-1602-PO-4502 ("Cause No. 4502") in the Marion Superior Court, Criminal Division, and she provided a copy of the order to The Oaks Academy. The cover sheet for the order identified Ford as the respondent. A box field under the phrase "Petitioner/Protected Person/Child's Name if Child is Protected Person" contained Woodson's

---

[1] Hamilton is an administrator at the school.

name, and immediately below that the sheet stated "And/or on behalf of minor family member(s): . . . [J.]" Appellees' Appendix Volume II at 46. The court set the matter for hearing on March 7, 2016. The order of protection named Woodson as the petitioner and stated that Ford was enjoined from threatening to commit acts of domestic or family violence "against the Petitioner and the following designated family or household members, if any: [J.]" and that he was prohibited from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating with the Petitioner, except: civil communication regarding child and to effectuate parenting time at neutral location." *Id*. at 48.

[4] The Oaks Academy contacted legal counsel regarding the protective order. The Oaks Academy provided Ford with access to the school facility for Lauds, chapel, and lunch, and it determined that it would not release J. to Ford, that Ford could not participate in field trips, and that the restrictions were to remain in effect until new documentation was provided to the school. It informed its faculty and Ford of the restrictions. It asked Woodson and Ford to provide updated court documents after the March 7th hearing and was later advised the hearing was moved to July 2016.

[5] On February 29, 2016, Ford filed a petition to establish paternity under cause number 49C01-1602-JP-7450 ("Cause No. 7450") in the Marion Circuit Court. On July 15, 2016, the court issued a Preliminary Order on Establishing Paternity under Cause No. 7450 finding that it was in the best interests of the child to grant shared physical custody and joint legal custody pending a final hearing and awarding Ford parenting time including Wednesdays after school

and on weekends. The court ordered the parties to communicate via text messaging or email about all issues involving legal custody and parenting time exchanges in light of the protective order under Cause No. 4502. On August 19, 2016, The Oaks Academy was provided with court documents relating to the paternity action, and Ford was permitted to pick up J. from school during the 2016/2017 academic year. Ford signed a summary of tuition and payment options document for the 2016/2017 academic year.

[6] Ford filed a complaint, as amended in August 2017, alleging that he and Woodson had an agreement with The Oaks Academy, that The Oaks Academy had no legal reason to exclude his access to J.'s school, and that The Oaks Academy excluding him from his child's education was a breach of contract. In August 2017, The Oaks Academy filed a motion to dismiss the complaint arguing that Ford was not a party to the 2014/2015 enrollment contract and that contract did not address student pick-up or parental involvement in school events. The court held a hearing on the motion to dismiss on September 18, 2017, at which Ford did not appear. Ford later filed a motion to reopen the hearing. On October 12, 2017, the court granted The Oaks Academy's motion to dismiss. Ford appealed, and in June 2018 this Court issued a decision finding that Ford had not received notice of the hearing on the motion to dismiss and remanded for further proceedings.

[7] The trial court on remand held a hearing on November 19, 2018, at which it heard argument. The Oaks Academy's counsel argued that Ford was not a party to the enrollment contract for the 2014/2015 academic year, that contract

was not for the relevant time period, there was no contract for the 2015/2016 school year, and that the contract was a tuition contract. Ford's counsel argued the school accepted J. for three years, the school "probably didn't make parents resign-up every year as long as they paid their tuition," and there was a contractual agreement between Ford and Woodson and The Oaks Academy "even though it may not be written for each and every semester that the . . . child is enrolled in the school." Transcript Volume 2 at 9-10. Ford filed a motion for leave to supplement the record requesting that the court consider documents showing he had a contractual relationship with The Oaks Academy. The court granted Ford's motion for leave to supplement the record, indicated there would be consideration of matters outside the pleadings and the motion to dismiss would be treated as one for summary judgment, and provided deadlines for the parties to present any pertinent materials. The Oaks Academy submitted a brief, an affidavit of the Head of School for The Oaks Academy Fall Creek campus, the 2014/2015 enrollment contract, the summary of tuition documents, the protective order under Cause No. 4502, and paternity action documents under Cause No. 7450. Ford filed a response together with his affidavit and school and paternity documents. On February 6, 2019, the court entered summary judgment in favor of The Oaks Academy.

### Discussion

[8]    A *pro se* litigant is held to the same standards as trained attorneys and is afforded no inherent leniency simply by virtue of being self-represented. *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014). We review an order for

summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Our review of a summary judgment motion is limited to those materials designated to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). We may affirm on any grounds supported by the Ind. Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox Cnty.*, 779 N.E.2d 1, 3 (Ind. 2002). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). If the moving party succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.*

[9] Ford asserts that he had a contractual agreement with The Oaks Academy even though it may not have been written for every semester that J. was enrolled in the school, that the protective order did not apply to The Oaks Academy or J., that the trial court gave no explanation for its entry of summary judgment, and that The Oaks Academy did not affirmatively negate his claims as required to merit summary judgment. Appellees respond that Ford was not a party to the 2014-2015 enrollment contract and there was no contractual obligation regarding student pick-up or parental participation in school activities. They argue that Ford's "real criticism is with The Oaks Academy's attempted compliance with the *ex parte* Protective Order from February 9, 2016 through the end of the 2015-2016 academic year." Appellant's Brief at 13. They also argue that they did not have a contractual obligation to release J. to Ford or

allow him to participate in school activities. In reply, Ford argues that a contractual relationship involves the exchange of a promise for performance, he agreed to pay tuition, and The Oaks Academy agreed to educate his child.

[10] The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds between the contracting parties on all essential elements or terms of the transaction. *Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016), *trans. denied*. In addition, to be valid and enforceable, a contract must be reasonably definite and certain. *Id.* (citing RESTATEMENT (SECOND) OF CONTRACTS § 33 (recognizing that, in order to give effect to a contract, its terms must be "reasonably certain")); *see also* Comment (b) to RESTATEMENT (SECOND) OF CONTRACTS § 33 (observing that "the degree of certainty required may be affected by the dispute which arises and by the remedy sought"). In interpreting a contract, a court may not write a new contract for the parties or supply missing terms. *B&R Oil Co., Inc. v. Stoler*, 77 N.E.3d 823, 829 (Ind. Ct. App. 2017), *trans. denied*.

[11] The designated evidence shows that in January 2016 Woodson informed The Oaks Academy that Ford could no longer pick up J. from school and that in February 2016 she obtained an order for protection against Ford from the Marion Superior Court under Cause No. 4502. The cover sheet for the order for protection, in the section identifying the petitioner/protected person, referenced J. as well as Woodson. The Oaks Academy received a copy of the protective order and, after consulting legal counsel, decided to provide Ford with access to its facility for Lauds, chapel, and lunch, that it would not release

J. to Ford at any time, and that Ford could not participate in field trips. Ford does not assert that he designated evidence showing that he updated Appellees with respect to the protective order or Cause No. 4502. The designated evidence shows that the Marion Circuit Court issued an order in July 2016 granting shared physical custody and parenting time under Cause No. 7450 and that The Oaks Academy was provided with documents related to the paternity action and permitted Ford to pick up J. from school during the 2016/2017 year. The enrollment contract and tuition documents do not contain provisions governing the release of students or field trips, and Ford does not designate other evidence of such terms.

[12] Even assuming some agreement existed between Ford and The Oaks Academy based on J.'s enrollment in the school and the payment of tuition, The Oaks Academy made a *prima facie* showing that it had not entered into an agreement which required it to release J. to Ford or to permit him to participate in field trips after it received a copy of the order for protection issued by the Marion Superior Court and before it received the paternity court documents, and Ford did not respond with evidence showing that The Oaks Academy had such an agreement with him. *See B&R Oil Co.*, 77 N.E.3d at 829 (finding there was nothing in the text of a right of first refusal that suggested or would support an inference that the agreement granted a right to purchase any property other than the leased premises).

[13] For the foregoing reasons, we affirm the entry of summary judgment in favor of The Oaks Academy.

Affirmed.

Altice, J., and Tavitas, J., concur.