Ed Robert ANDERSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 06A01–0306–CR–214.

Court of Appeals of Indiana.

Nov. 19, 2003.

See also 448 N.E.2d 1180.

Kevin Wild, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Ed Robert Anderson appeals the sentence imposed by the trial court after his guilty plea and conviction on one count of attempted murder, a class A felony.

We affirm.

*ISSUE*

Whether the trial court committed reversible error by relying on improper aggravating factors when it sentenced Anderson.

*FACTS*

The facts surrounding the events that led to Anderson's attempted murder conviction were summarized by our supreme court in his direct appeal as follows:

The evidence at trial established that at approximately 7:00 p.m. on December 19, 1977, Jeffrey Parker, George Anderson, and defendant robbed Sherrill Marshall of both his money and his car. One of the three also shot Marshall in his face at close range. Marshall was not mortally wounded and later identified defendant as the one who shot him. Defendant admitted at trial that he took part in the robbery and was the one who shot Marshall. While driving around in Marshall's car, the three approached Mashriki Verissimo who was walking along East 36th Street on her way home from a friend's house. The evidence showed that defendant and Parker walked up behind Verissimo and put a gun to her head thereby forcing her to give up her purse and package. At trial, defendant also admitted this to be true.

Still riding around in Marshall's car, the three spotted Michael Krumlauf driving on the north side of Indianapolis. They followed Krumlauf until he pulled into a driveway. When Krumlauf started to step away from his Malibu automobile, the three accosted him and forced him into the backseat of his car. One of

the three sat in the backseat with Krumlauf as they began driving around again. Krumlauf was forced to take off most of his clothing and there was evidence suggesting that Krumlauf was forced to commit some sexual acts. While driving around, the person sitting next to Krumlauf shot him three times in the head, killing him. Although Parker and George Anderson testified that defendant was the one who shot Krumlauf, defendant denied their claims stating that he was in the front seat of the car when the killing occurred. The jury acquitted defendant of Krumlauf's killing.

With Krumlauf's body still in the backseat, the three proceeded to the Ayr–Way Shopping Center on Lafayette Road in Indianapolis. There, one of the three left the car and accosted Izora West by attempting to grab her purse. When she resisted, she was shot in the head and killed. Again, George Anderson and Parker testified that defendant killed West; defendant testified that Parker killed her. Two witnesses who were shopping at the Ayr–Way Center when West was killed noticed Krumlauf's Malibu automobile. They were able to see into the front seat of the car and identified defendant as the person seated on the passenger's side of the front seat. Further, they noticed that West's killer got into the backseat of the automobile. The jury acquitted defendant of West's killing.

The three subsequently dumped Krumlauf's body into the White River. *Anderson v. State*, 448 N.E.2d 1180, 1181–82 (Ind.1983).

The jury convicted Anderson of attempted murder, three counts of armed robbery, and criminal confinement. *Id.* at 1181. As indicated above, Anderson was acquitted of the armed robbery of West and of the murders of West and Krumlauf. For the attempted murder, the trial court sentenced Anderson to the presumptive thirty-year term plus a ten-year enhancement. *Id.* at 1186. For each of the armed robberies and the criminal confinement, it sentenced Anderson to the presumptive ten-year term plus a five-year enhancement. *Id.* All were ordered to be served consecutively, for an aggregate term of one hundred years. *Id.* On direct appeal, our supreme court considered Anderson's claims of sentencing error and found that the aggravating circumstances justified the enhanced and consecutive sentences.

In December of 1996, Anderson filed a petition for post-conviction relief. His amended petition asserted fundamental trial court error in that the jury was not properly instructed as to the charged offense of attempted murder. The post-conviction court agreed, finding that "the jury should have been instructed that Anderson had to entertain the simultaneous intent to kill while the proscribed conduct occurred." *State v. Anderson,* 751 N.E.2d 714, 716 (Ind.Ct.App.2001). Because the law "requires an instruction setting forth the elements of attempted murder to include that the defendant, acting with the specific intent to kill, engaged in conduct which was a substantial step toward the commission of murder," we affirmed the judgment of the post-conviction court. *Id.* at 717.

On September 24, 2002, Anderson appeared before the trial court to plead guilty to attempted murder pursuant to a plea agreement that allowed the parties to argue sentencing. At the hearing, Anderson agreed that had the matter gone to trial, the State would have been able to prove

> that on December 19, 1977, Sherill Marshall was going home from work and stopped his automobile at the intersec-

tion of West 27th Street and Rader Street in Indianapolis, Marion County, Indiana, when he was approached by three (3) individuals who demanded property from him. They robbed him of his billfold, his money and other items from his vehicle. When he was approached, one (1) of the individuals put a gun to his right temple, and the robbery then took place. He later identified the individual who held the gun to his head as being the Defendant Ed Robert Anderson. He identified him in a photo array and identified him in open court in, in a previous hearing in this matter. During the course of those events, one (1) of the individuals said to Mr. Marshall that they were going to kill him anyway and at that point in time he felt the pressure of the gun pressing against his head at the temple which caused him to turn his head, tilt his head slightly to the left and at the same time Mr. Anderson pulled the trigger of the gun and shot him in the head with the intent to kill him and the act of his having tilted his head as a result of the pressure of the gun caused the bullet to hit a partial plate in his mouth and exit through his opposite cheek rather than going through his brain, which kept him from being killed. Furthermore, during August of 1980, the Defendant testified in this Court at a previous hearing that he in fact was the individual who had shot Mr. Marshall in the head.

(September 24, 2002 hearing, Tr. 12–13). The trial court accepted Anderson's plea and entered judgment of conviction.

On February 27, 2003, the trial court convened a sentencing hearing. The State submitted transcripts of a portion of trial testimony for consideration in sentencing. The trial court stated that it took "judicial notice of the entire record ... and ... specifically, upon this motion [took] judicial notice of the transcripts" submitted. (February 27, 2003 hearing, Tr. 11).[1] The State argued that Anderson should be ordered to serve an enhanced, consecutive sentence. Anderson argued for the presumptive term, served concurrently, arguing that the crime was the result of circumstances unlikely to recur, he had been only seventeen years of age at the time,[2] and that his pleading guilty showed his remorse. At the conclusion of the hearing, the trial court indicated that it would review further case law on the matter and issue a written order reflecting its reasoning for sentencing.

On April 9, 2003, the trial court issued a four-page sentencing order.[3] The order stated that the trial court had "reviewed the Presentence Investigation Report, the transcripts of testimony during trial, and ... our Supreme Court's findings on direct appeal in this case." (App. 9). It specifically quoted the direct appeal opinion's discussion of "several aggravating circumstances"—"the seriousness of Defendant's crimes ... and the Defendant's prior juvenile record including the fact that the Defendant was just being released from parole when the current crimes were committed" and how the trial record depicted "the type of crimes Defendant committed, the number of crimes, and the

---

1. However, neither the record nor the transcripts discussed are included in Anderson's record with this appeal.

2. According to the pre-sentence investigation report, Anderson's date of birth is April 14, 1960. Thus, he was within four months of being eighteen at the time of the crime.

3. We direct appellant's counsel to Indiana Appellate Rule 46(A)(10), which states, "When sentence is at issue in a criminal appeal, the brief shall contain a copy of the sentencing order."

particular manner in which the Defendant had committed them." (App. 10, quoting from 448 N.E.2d at 1186). The trial court then found one mitigator: Anderson's age at the time of the crime. The trial court found "aggravators *including* prior criminal activity in which as a juvenile, within the immediately preceding thirteen (13) months, he had received probation for an Assault and Battery and commitment to I.B.S. for a First Degree Burglary." *Id.* (emphasis added). The trial court further found as aggravating factors, the "particularized circumstances" surrounding the series of extremely violent criminal acts that took place on the night of December 19, 1977. The trial court also found Anderson to be "in need of correctional or rehabilitative treatment that can best be provided by" his commitment to a penal facility and evidence of the "future dangerousness of" Anderson. *Id.* Finally, the trial court found "just the opposite" of Anderson's argument that the crime was the result of circumstances unlikely to recur. *Id.* at 12. In this regard, the court considered Anderson's history of drug and alcohol abuse "prior to this crime," his substance abuse treatment during his incarceration, and evidence that he had nonetheless continued to use drugs as showing Anderson's inability to live in conformity with the law. *Id.* The trial court stated that it had "carefully weighed the aggravators and all the mitigators proffered by" Anderson and had found "that the aggravators far outweigh the mitigators." *Id.* The trial court then sentenced Anderson to a forty-year term (the presumptive thirty-year sentence enhanced by ten years), to be served consecutive to his other sentences.

## DECISION

■ Sentencing decisions rest within the discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Buchanan v. State,* 767 N.E.2d 967, 970 (Ind.2002). It is within the trial court's discretion to determine whether a presumptive sentence will be enhanced due to aggravating factors. *Id.* It is also within the trial court's discretion to order that term to be served consecutive to sentences for other offenses. *McCarthy v. State,* 749 N.E.2d 528, 539 (Ind.2001). When sentencing a defendant, a trial court may consider certain aggravating and mitigating circumstances. *Sherwood v. State,* 749 N.E.2d 36, 38 (Ind.2001) (citing IND.CODE §§ 35–38–1–7.1(b) and 35–38–1–7.1(c)). The court may increase a sentence or impose consecutive sentences if the court finds aggravating factors. *Id.* One valid aggravator alone is enough to enhance a sentence or to impose it to run consecutively with another. *Id.* And the same factor may be used both to enhance a presumptive sentence and to justify consecutive sentences. *McCarthy,* 749 N.E.2d at 539.

Anderson claims that "all of the aggravators relied upon by the trial court were improper," and because it found one mitigator, his age at the time of the crime, the required balancing was necessarily erroneous and requires reversal. Anderson's Br. at 7. We disagree.

■ Anderson first argues that the trial court erred in considering Anderson's "prior criminal activity as a juvenile" because the record fails to provide specific details in that regard and then notes his lack of a "prior record as an adult." Anderson's Br. at 5. Given the undisputed fact that Anderson committed the attempted murder before reaching legal adulthood, it would have been an impossibility for him to have had an adult record. He cites *Lewis v. State,* 759 N.E.2d 1077, 1086 (Ind. Ct.App.2001), *trans. denied,* for the proposition that without specific details as to

juvenile criminal activity, such cannot serve as a valid aggravating circumstance. However, subsequent to *Lewis*, our supreme court discussed the use of a "juvenile history for purposes of sentencing" in *Saylor v. State*, 765 N.E.2d 535, 559 (Ind. 2002). It declared that

> the court must rely on more than the existence of a delinquency petition. When a juvenile proceeding ends without a disposition, the mere fact that a petition was filed alleging delinquency does not suffice to prove criminal history. Indeed an adjudication itself may not be enough to prove a criminal history. However, the *acts* committed by the juvenile may constitute a criminal history to support enhancement of a sentence.

*Id.* (citations omitted) (emphasis in the original). Here, the trial court specified—based upon facts in the pre-sentence investigation report, the accuracy of which Anderson had acknowledged—that within the thirteen months immediately preceding the night of December 19, 1977, Anderson was found to have committed what would be the offenses of assault and battery and burglary if committed by an adult. Therefore, we do not find that the trial court improperly considered Anderson's juvenile criminal history as an aggravating circumstance in sentencing him.

■ Anderson next argues that the trial court erroneously considered as an aggravator "particularized circumstances" which "had nothing to do with the manner in which" the attempted murder, the offense for which he was sentenced, was committed. Anderson's Br. at 6. Anderson again cites *Lewis*, but the reference therein is somewhat broader than his argument. We held in *Lewis* that only the circumstances of the offense on which the defendant had been found guilty could be considered as appropriate aggravating circumstances.

759 N.E.2d at 1086. Here, Anderson was found guilty of not only attempted murder but also one count of criminal confinement and three counts of armed robbery. The trial court specifically noted Anderson's willing participation with two compatriots in committing these very violent offenses. In the course of the confinement and robberies, two persons were killed; one victim was forced to disrobe and engage in sex acts; that victim's body was then driven around while another armed robbery and killing took place and was eventually dumped in the river. These facts, cited by the trial court, are particularized circumstances relating to the offenses of which Anderson was found guilty. Therefore, they were properly considered by the trial court in sentencing.

■ Finally, Anderson claims that the trial court improperly considered his conduct during incarceration when it found as aggravators his "future dangerousness" and "the likeliness of the defendant to commit another crime." Anderson's Br. at 6. His only authority for this contention is our holding in *Ingle v. State*, 766 N.E.2d 392, 395 (Ind.Ct.App.2002), *trans. denied*, that evidence of the defendant's conduct during incarceration was not an "appropriate consideration" as a mitigating circumstance for sentencing purposes. We do not find *Ingle* directly apposite to the trial court's reasoning here. First, our analysis in *Ingle* followed our statement that "only evidence reflecting the conditions as they existed as of the date of sentencing should be considered by the trial court." *Id.* Here, the evidence considered by the trial court fit within that parameter. Further, when imposing sentence, trial courts are required to consider "the risk that the person will commit another crime." Ind. Code § 35–38–1–7.1(a)(1). The trial court specifically noted Anderson's history of drug and alcohol abuse "prior to this

crime" and that he had participated in a substance abuse of program while incarcerated; it then noted that "after his participation in the substance abuse program," Anderson had engaged in criminal drug activity while still incarcerated in prison. (App. 12). The trial court then reasoned that because Anderson's "prior record was one of violence, burglary and drug and alcohol abuse" and he had "been unable to conform his life to absence of criminal activity even behind bars," he would not likely "conform his life to society's standards if not incarcerated." *Id.* Based upon the facts and the statements by the trial court, we do not find this to have been an inappropriate consideration for sentencing purposes.

 The trial court also found as an aggravating circumstance Anderson's need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility. As the State notes, Anderson neither challenges nor acknowledges this aggravator. In its review of sentencing in Anderson's direct appeal, our supreme court found that he "was just being released from parole when the current crimes were committed." 448 N.E.2d at 1186. The trial court quoted this finding, as well as stating that it had reviewed the presentence investigation report—which reflected the same. These facts support that conclusion as an aggravating circumstance for sentencing.

After Anderson's trial in 1980, he was sentenced to the presumptive thirty-year term plus a ten-year enhancement for having committed attempted murder, and he was ordered to serve the term consecutive to those ordered for his armed robbery and criminal confinement convictions. Our supreme court found the aggravating circumstances justified both the enhanced and consecutive sentences. 448 N.E.2d at 1186. After the post-conviction court's re-versal of his attempted murder conviction due to a jury instructional error, Anderson pleaded guilty to the same offense based upon the same facts that took place on the night of December 19, 1977. The trial court considered those facts and the additional fact that despite participating in substance abuse treatment while incarcerated, Anderson continued to engage in criminal drug activity. The trial court then enumerated a host of aggravating factors, and concluded that they "far outweigh[ed]" the lone mitigating factor of Anderson's young age at the time of the crime, and sentenced him to serve a forty-year prison term, to run consecutive to that for the other convictions. We find no abuse of discretion here. *See Buchanan,* 767 N.E.2d at 970.

Affirmed.

MAY, J., and BARNES, J., concur.